Filed 11/18/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| In re CARLOS H., a Person Coming Under the Juvenile Court Law. | B268893 (Los Angeles County Super. Ct. No. PJ51548) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS H.,<br><br>    Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Morton Rochman, Judge. Affirmed.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jonathan J. Kline and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Pursuant to Welfare and Institutions Code section 602,[1] the People filed a petition alleging that Carlos H. (Carlos) committed two counts of sexual battery against a female high school classmate. The juvenile court, prior to adjudication, issued a restraining order against Carlos prohibiting him from, among other things, contacting the victim through a third party, and directing him to stay 100 yards away from the victim (the order). On appeal, Carlos contends that the juvenile court abused its discretion, because the form used by the court to enter the order, form JV-255, purportedly does not permit such restrictions.[2]

We disagree and, accordingly, affirm the juvenile court's issuance of the order.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Initially, Carlos challenged other aspects of the order, such as the purported lack of evidence supporting the order. However, those arguments were subsequently rendered moot when, during the appellate briefing process, there was an adjudication, which found the allegations of the petition to be true.

# BACKGROUND

## I.    The incident

On March 19, 2015, while at school, Carlos (aged 15 at the time) asked the victim for a hug.  Although the victim did not know Carlos well—they had previously attended the same elementary school—she reluctantly gave him one.  Carlos then asked her for a second hug while he stared at her breasts.  The victim told him to stop staring at her breasts, and she walked away without hugging him.  Carlos followed the victim and poked her in the buttocks.  He then reached around the victim and grabbed her right breast.  The victim reported the incident to the school's resource sheriff deputy.  During an interview with the deputy, Carlos admitted that he poked the victim's buttocks and grabbed her breast and stated that he had "messed up."

## II.    The order

On May 29, 2015, the People filed a petition alleging two counts of misdemeanor sexual battery (Pen. Code, § 243.4, subd. (e)(1)).  On that same day, Carlos denied the allegations.

On November 17, 2015, the People requested a restraining order "for the victim's safety as well as the public's safety."  The hearing on the restraining order was continued to November 30, 2015, in order that Carlos's assigned counsel, who was ill, could attend the hearing.  In the interim, the juvenile court orally ordered Carlos to have "no contact directly or indirectly in any way" with the victim

3

and to "have no other person on your behalf contact her." Carlos's counsel did not object to this order.

On November 30, 2015, the People presented the court and defense counsel with a proposed restraining order "on Form No. JV255 commonly called Restraining Order-Juvenile" (the form).

The form has several numbered sections that contain pre-printed orders for the court to select from depending on the facts of a particular case; the court need only check a box to select an option. For example, section 4 of the form includes three pre-printed options for restraining orders for a "child in delinquency proceedings." Section 5, which applies to orders for a person "other than [a] child in delinquency proceedings," contains a much longer list of possible options, including options that are not offered in section 4, such as specifying how far a restrained person "must stay away" from the protected person and/or certain locations, such as the home, workplace or school of the protected person.

Section 9 on the form, in contrast to sections 4 and 5, does not offer a menu of pre-printed choices; instead, it leaves a blank for the court to specify any "other orders" it deems necessary.

On the form prepared by the People, a box in section 4 was checked which required Carlos to "not contact, threaten, stalk or disturb the peace" of the victim. Section 9 was also filled out; it contained two orders that were not pre-printed

4

on the form:  "Stay 100 yards away from victim";[3] and "no contact with the victim through a third party" (collectively, the "other orders")

Carlos's counsel objected to the proposed "other orders" in section 9 on the ground that "they are seeking to have a level of restraint that is not accorded to a young person who is the subject of delinquency proceedings."  Defense counsel argued that the proposed "other orders" included options from section 5, which, according to Carlos's counsel, was improper because section 5 was designed to be used against a "third party adult or third party pseudo parent," not a minor, such as Carlos.  The People argued that, given the facts of this particular case, the proposed "other orders" were "appropriate" and the mere fact that certain options are included in section 5, but not in section 4, does not mean that the People are precluded from requesting such options in section 9 in order to have a restraining order "particularly tailored" to the facts of the instant case.

The juvenile court signed the order, finding that the "other orders" were "well made, well tailored, and appropriate."  Carlos timely appealed.

### III.  The adjudication

On July 11, 2016, the matter was adjudicated, and the trial court sustained the petition, extended the order and placed Carlos "home on probation."

---

[3] At the time, Carlos and the victim did not attend the same school.

## DISCUSSION

### I.    Standard of review

With regard to the issuance of a restraining order by the juvenile court pursuant to section 213.5, appellate courts apply the substantial evidence standard to determine whether sufficient facts supported the factual findings in support of a restraining order and the abuse of discretion standard to determine whether the court properly issued the order.  (*In re C.Q.* (2013) 219 Cal.App.4th 355, 364; see *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1512.)[4]  Because this appeal is now confined to only whether the "other orders" were properly included in the order, we will review the trial court's decision under the abuse of discretion standard.

" 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' [Citation.]  Throughout our analysis, we will not lightly substitute our decision for that rendered by the juvenile court.  Rather, we must indulge all reasonable inferences to support the decision of

---

[4] Similarly, we review the grant or denial of a preliminary or a permanent injunction (see, e.g., *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390) or a domestic violence protective order (*S.M. v. E.P.* (2010) 184 Cal.App4th 1249, 1264) under the abuse of discretion standard.

the juvenile court and will not disturb its findings where there is substantial evidence to support them." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1506–1507.)

However, "[j]udicial discretion to grant or deny an application for a protective order is not unfettered. The scope of discretion always resides in the particular law being applied by the court, i.e., in the ' "legal principles governing the subject of [the] action . . . ." ' " (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337.) Accordingly, the de novo standard of review applies to issues of statutory interpretation. (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 210 [interpreting § 213.5, subd. (a)]); see generally, *Bruns v. E–Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 ["[s]tatutory interpretation is a question of law that we review de novo"].)

## II. The juvenile court did not abuse its discretion

The parties have not directed us to and we are not aware of any California case law interpreting or construing the form. Consequently, we must turn to the relevant rules of court and statutes upon which the form is premised.

### A. *The form's statutory foundation*

The California Rules of Court provide that where, as here, a petition has been filed pursuant to section 602, "the court may issue restraining orders as provided in section 213.5." (Cal. Rules of Court, rule 5.630, subd. (a).) The California Rules of Court also provide that any such restraining order "must be prepared on Restraining Order-

7

Juvenile (form JV-255)."  (Cal. Rules of Court, rule 5.630, subd. (f)(2).)

Section 213.5 empowers the juvenile court to issue a wide range of restraining orders.  (§ 213.5, subd. (d)(1).)  In connection with petitions brought pursuant to section 602, the juvenile court is empowered to issue a restraining order to protect a number of different classes of people:  (1) the child who is the subject of the petition; (2) any other child in the subject child's household; (3) the child's parent, guardian or current caretaker; (4) the child's current or former probation officer or court appointed special advocate; and (5) "any person the court finds to be at risk from the conduct of the child . . . ."  (§ 213.5, subd. (b).)

In order to protect the first four classes of protected persons, the juvenile court is empowered to enjoin "any person" from "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of" those protected persons.  (§ 213.5, subd. (b).)  This language is mirrored in section 5 of the form.

However, when the child is the person whose conduct must be restrained, the Legislature did not repeat the list of enjoinable conduct that it used for the other classes of protected persons.  Instead, the Legislature opted for a less

detailed, more generalized list: the court may enjoin "the child from contacting, threatening, stalking, or disturbing the peace of any person the court finds to be at risk from the conduct of the child." (§ 213.5, subd. (b).) This language is mirrored in section 4 of the form.

Section 213.5 is part of a web of statutory provisions known as the "juvenile delinquency laws." (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614.) "The purpose of juvenile delinquency laws is twofold: (1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public . . . .' " (*Ibid*.) Section 202, subdivision (b), in pertinent part, provides: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the *interests of public safety and protection*, receive care, treatment and guidance that is consistent with their best interest, that *holds them accountable for their behavior, and that is appropriate for their circumstances. . . .*" (Italics added.)

Under the juvenile delinquency laws, and consistent with their overarching purpose, the juvenile court is expressly authorized to make "*any and all reasonable orders* for the care, supervision, custody, *conduct*, maintenance, and support of the child . . . ." (§ 362, subd. (a), italics added.)

The question effectively posed by this appeal is this: What is the significance, if any, in the Legislature's shorter

9

more generalized approach to identifying threatening conduct by the child—does it matter that the Legislature did not specify that the child may be prohibited from contacting a protected person both directly and indirectly; does it matter that the Legislature did not specify that the child may be prohibited from disturbing the peace of a protected person by having to stay a certain distant away?  We hold there is no meaningful significance.

### B. *California law for interpreting statutes*

"We begin with the fundamental rule that our primary task is to determine the lawmakers' intent." (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.)  "In construing statutes, we aim 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77 (*Klein*).) California courts "have established a process of statutory interpretation to determine legislative intent that may involve up to three steps." (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 786–787 (*Alejo*).)  The "key to statutory interpretation is applying the rules of statutory construction in their proper sequence . . . as follows:  'we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction.' " (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082 (*MacIsaac*).)

10

"The first step in the interpretive process looks to the words of the statute themselves." (*Alejo, supra*, 212 Cal.App.4th at p. 787; see *Klein, supra*, 50 Cal.4th at p. 77 [" 'statutory language is generally the most reliable indicator of legislative intent' "].)

"If the interpretive question is not resolved in the first step, we proceed to the second step of the inquiry. [Citation.] In this step, courts may 'turn to secondary rules of interpretation, such as maxims of construction, "which serve as aids in the sense that they express familiar insights about conventional language usage." ' [Citation.] We may also look to the legislative history. [Citation.] 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' [Citation.] [¶] 'If ambiguity remains after resort to secondary rules of construction and to the statute's legislative history, then we must cautiously take the third and final step in the interpretive process. [Citation.] In this phase of the process, we apply "reason, practicality, and common sense to the language at hand." [Citation.] Where an uncertainty exists, we must consider the consequences that will flow from a particular interpretation. [Citation.] Thus, "[i]n determining what the Legislature intended we are bound to consider not only the words used, but also other matters, 'such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy and contemporaneous construction.'

11

[Citation.]" [Citation.] These "other matters" can serve as important guides, because our search for the statute's meaning is not merely an abstract exercise in semantics. To the contrary, courts seek to ascertain the intent of the Legislature for a reason—"to *effectuate the purpose* of the law." ' " (*Alejo*, *supra*, 212 Cal.App.4th at pp. 787–788; see *MacIsaac*, *supra*, 134 Cal.App.4th at p. 1084.)

We do not necessarily engage in all three steps of the analysis. "It is only when the meaning of the words is not clear that courts are required to take a second step and refer to the legislative history." (*Soil v. Superior Court* (1997) 55 Cal.App.4th 872, 875.) "If ambiguity remains after resort to secondary rules of construction and to the statute's legislative history, then we must cautiously take the third and final step in the interpretative process." (*MacIsaac*, *supra*, 134 Cal.App.4th at p. 1084.)

C. *The interpretation offered by Carlos is not reasonable*

Carlos argues that he cannot be restrained from contacting the victim through a third party because section 4 of the form (and the relevant part of section 213.5, subdivision (b)) does not expressly prohibit such indirect contact by the child who is the subject of the 602 petition. Only section 5 of the form, which is not applicable to him, expressly prohibits "indirect" contact with a protected person. Similarly, Carlos argues that he cannot be prevented from disturbing the peace of the victim by coming within 100 yards of her because section 4 of the form (and

12

the relevant part of section 213.5, subdivision (b)) does not expressly allow a "stay away" restriction; only section 5 of the form provides for such a restriction.

Implicitly, Carlos is arguing that our interpretation of the form and, by extension, section 213.5 should be governed by a maxim of statutory construction, *expressio unius est exclusio alterius*—that is, "[t]he expression of some things in a statute necessarily means the exclusion of other things not expressed." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852.) This maxim provides that "[w]hen the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.'" (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576.) " '[U]nder the doctrine *of expressio unius est exclusio alterius* we must infer that the listing of terms and conditions is complete, and that there are no additional requirements which bind petitioner.'" (*People v. Johnson* (1988) 47 Cal.3d 576, 593.)

However, the doctrine of *expressio unius est exclusio alterius* has been defined by our Supreme Court as a "mere guide[ ]" to be utilized when a statute is ambiguous. (*Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391.) The Supreme Court has further limited this principle of statutory construction as follows: " '[T]he maxim *expressio unius est exclusio alterius* is inapplicable . . . "where no reason exists why persons and things other than those enumerated should not be included, and manifest injustice would follow by not including

13

them . . . ." ' " (*People v. Reed* (1996) 13 Cal.4th 217, 227.) Further, our Supreme Court has noted: "It is true that the canon of construction upon which respondent rests its case should be applied 'where appropriate and necessary to the just enforcement of the provisions of a statute.' [Citation.] Nevertheless, *expressio unius est exclusio alterius* is no magical incantation, nor does it refer to an immutable rule. Like all such guidelines, it has many exceptions . . . ." (*Estate of Banerjee* (1978) 21 Cal.3d 527, 539.) In *Estate of Banerjee*, the Supreme Court listed some of the exceptions to the doctrine, including the following: "The rule is inapplicable: where no manifest reason exists why other persons or things than those enumerated should not be included and thus exclusion would result in injustice." (*Estate of Banerjee*, *supra*, 21 Cal.3d at p. 539, fn. 10.) In the case of *In re Michael G.* (1988) 44 Cal.3d 283, 291, the Supreme Court noted: " 'This rule, of course, is inapplicable where its operation would contradict a discernible and contrary legislative intent.' "

Here, there is no discernible reason why a minor, such as Carlos, should not be prohibited from contacting his/her victim either directly or indirectly, or be prohibited from disturbing the peace of the victim by being required to stay 100 yards away from him or her. Under Carlos's reasoning, the fact that section 4 does not contain the words "molest," "attack," "strike," "sexually assault," "batter," or "harass," while the inapplicable section 5 does, would mean that the juvenile court would not be permitted to prohibit him from

14

doing all of those things to the victim in this case. In other words, Carlos's interpretation would invite a manifest injustice—the juvenile court would not be able to enjoin him from doing the same exact thing that led to the filing of the petition in the first place. Such an interpretation is patently at odds with the express intent of the Legislature to protect both minors *and* their victims, as well as other members of the public at large.

In short, we are unpersuaded by the premise inherent in Carlos's argument that the Legislature intended that persons threatened by a minor should enjoy less protection than persons threatening the minor. Section 9 on the form was included so that the juvenile court could do precisely what it did here—complement the general guidance offered by section 4 of the form and section 213.5, subdivision (b)— by tailoring the restraining order to match the particular facts of the case by either adding more and/or more specific restrictions. Section 9, in other words, is a mechanism whereby the juvenile court can issue an order that further promotes the dual purposes of the juvenile delinquency laws: serving the best interests of the delinquent minor and providing for the protection and safety of the public.

Accordingly, we hold that the order, including the "other orders" in section 9 of the form, was a reasoned and reasonable response by the juvenile court to Carlos's conduct and the other relevant facts of the case (e.g., the fact that Carlos and the victim no longer attend the same school). Moreover, the order was entirely consistent with the public

policy objectives underlying the juvenile delinquency laws generally and section 213.5 specifically.  Because the juvenile court's decision was not arbitrary, capricious or patently absurd, we affirm the order.

## DISPOSITION

The issuance of the restraining order is affirmed.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

16