Filed 6/26/19; Certified for Publication 7/18/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B293062 (Los Angeles County Super. Ct. No. 18CCJP03843A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff, v. C.M., Defendant and Respondent; AL.M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Natalie P. Stone, Judge.  Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Respondent.

Mary C. Wickham, County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff.

_____

Al.M. (father) sexually abused A.M. (minor) and the juvenile court issued a two-year restraining order prohibiting father from having any visitation or contact with minor. Father appeals the portion of the restraining order denying him any contact, claiming it is not supported by substantial evidence. We find no error and affirm.

**FACTS**

Minor was born in November 2005.

The evidence in the dependency proceeding below established that father and C.M. (mother) periodically lived together for short periods of time during an on and off relationship. They were never married. When they were apart, he would occasionally visit minor and stay overnight at mother's house. In October 2007, when minor was almost two years old, she pointed to her vagina and buttock and said, "Papi aqui."

In July 2009, minor told mother that father bit her while on a bed, and then said that father touched her private parts over her clothing. She said that father licked her vagina five times, and that it was underneath her underwear. There was a subsequent investigation, and the allegation was substantiated. The police thought minor was repeating something that she had heard on television and dropped charges against father. Mother forced father out of the house. Nonetheless, minor had overnight visits with father.

In 2016, mother and father began dating again. She gave birth to G.M., a boy, in April 2018.[1]

On April 19, 2018, mother found a note in minor's pocket saying that father had raped her. When mother talked to minor, she denied that there had been any penetration, and said father had not threatened her. Minor never reported the abuse because she did not want her unborn brother to grow up with separated parents, and she did not want her mother to be stressed and lose the baby.

Mother texted father and confronted him about touching minor. He called and mother asked, "How could you do this to your daughter?" He did not confirm or deny the allegations. He said it was a misunderstanding and that he wanted to talk to mother and minor about it. That night, mother filed a police report.

On April 20, 2018, the Department of Children and Family Services (Department)[2] received a report that minor had been sexually abused by father and wanted to kill herself. In her initial interview with a social worker, minor confirmed the

---

[1]    G.M. is not a subject of this appeal.

[2]    The Department takes no position in this appeal.

referral allegations, said she was no longer suicidal, and that the abuse started when mother was two months pregnant in September 2017.

While recounting instances of abuse, she explained that father would get in bed behind her, rub his penis against her buttocks and vagina, and squeeze her breasts under her clothing. At times he would use two fingers to rub her vagina over her clothing. Father had a pattern: he would lie next to her to touch her, then go to the bathroom for a long time, and then return to touch her again. The touching would last an hour to an hour and a half. During the abuse, she was fully clothed but believed that father was undressed because of the way his penis felt. She pretended to be asleep. He would put his finger into her vagina over her clothes, and it hurt her "a little bit." One time he tried to put his hand inside her shorts but stopped when she elbowed him.

She was scared and confused during the abuse, which occurred at night. During the day, he would act normal as though nothing had happened. He would talk about God and say that because people are born with a conscience, they know what is right or wrong. In the minor's opinion, he was trying to justify what he had done to her. She had headaches and her body was sore. The last time he touched her was on Valentine's Day 2018.

Father denied the allegations and blamed them on minor not wanting him to resume a relationship with mother. Also, he blamed it on minor being jealous due to the prospect of having a sibling, and on maternal grandmother for trying to interfere and keep mother away from him.

In early May 2018, mother went to Family Law Court to obtain a restraining order against father. The Family Law Court

granted a temporary restraining order pending a September 13, 2018, hearing on the merits.

Twice, minor conducted pretext phone calls to father. He did not make any incriminating statements. Minor sent a text message directly addressing the issue of sexual abuse but father did not respond.

A social worker called father and offered to arrange a polygraph test. He did not respond.

On June 6, 2018, the Department obtained an order to remove minor and G.M. from father. About two weeks later, the Department filed a petition under Welfare and Institutions Code section 300, subdivisions (b)(1) and (d)[3] as to both children, and under subdivision (j) as to G.M. The petition contained allegations that father sexually abused minor, and that mother failed to protect minor from father.

A detective submitted the case to the District Attorney but no criminal charges were filed.

The juvenile court detained the children from father and released them to mother. It held a combined adjudication and disposition hearing on September 13, 2018, and it considered the request for a restraining order.[4] The juvenile court stated that it had considered a video of an interview with minor as well as the rest of the record and found minor to be consistent and credible every time she gave an account of the sexual abuse. Then the

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[4] California Rules of Court, rule 5.630(a) establishes that after the Department has filed a petition under section 300, a juvenile court is authorized to issue a restraining order as provided in section 213.5.

juvenile court stated, "I just completely disagree with the reported results from the police and find that, in fact, all these allegations are . . . true. The father did rub his penis on her. He fondled her vagina and her breast. And this is a total abrogation of his role as a father and very, very detrimental to his child."

The juvenile court struck the failure to protect allegations against mother. It then sustained the amended petition as to both children based on the section 300 subdivisions (b), (d) and (j) allegations against father.

Turning to disposition, the juvenile court was informed that minor did not want visitation with father. It removed the children from his custody and ordered that he receive family enhancement services. In contrast, as to father, no reunifications services were ordered. While father was granted visitation with G.M., he did not receive visitation with minor. Father was ordered to participate in a parenting class, sex abuse counseling for perpetrators, and individual counseling.

The juvenile court granted a restraining order prohibiting father from having any contact with minor, "either directly or indirectly in any way, including but not limited to, in person, by telephone, in writing, by public or private mail, by e-mail, by text message, by fax, or by other electronic meas." The order was for two years.

This appeal followed.

## DISCUSSION

A restraining order under section 213.5 is reviewed for an abuse of discretion. The juvenile court's factual findings are upheld if they are supported by substantial evidence. (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 866.)

Under section 213.5, a juvenile court may issue an order enjoining any person from contacting a child if such contact would jeopardize the child's safety. (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363; *In re B.S.* (2009) 172 Cal.App.4th 183, 194 [analogizing section 213.5 to Family Code section 6340, a statute permitting a protective order if the failure to issue the order may jeopardize the petitioner's safety].) Because this issue arises in a dependency proceeding, we must keep in mind that the "purpose of a dependency hearing is to determine the best interests of the child and to protect those interests. [Citations.]" (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1132, disapproved on other grounds in *People v. Brown* (1994) 8 Cal.4th 746, 749, 763.)

Father argues that there was no credible evidence that an order restricting all communication between minor and him was necessary to ensure her safety. He cites evidence of minor's mental resiliency despite the sexual abuse. The suggestion is that because minor has been resilient, she is strong enough to have contact with him.

These arguments are unavailing.

The evidence established that father groomed and sexually abused minor over many years, and that the nature of the sexual abuse progressed. During the sexual abuse, she was scared and confused. After he sexually abused her, he would talk about God, and she thought that he was trying to justify his actions. When his behavior came to light, father denied the sexual abuse,

7

suggesting that he does not understand the damage he has done to her, and further suggesting a high risk that the grooming would continue if he was given access to her in any fashion. Importantly, her attorney informed the juvenile court minor did not want to see father. We conclude there was sufficient evidence that any contact between father and minor would jeopardize her emotional and psychological safety regardless of whether she has been resilient. Further, if father had contact with minor through phone calls, e-mails, texts or other methods, the evidence suggests a risk that father would try to manipulate her into seeing him. Thus, there is a sufficient basis to also conclude that her physical safety would be at risk but for the restraining order proscribing all contact.

Father argues that the "dependency scheme includes a presumption that the safety of a dependent child who was subjected to non-severe sexual abuse *can* be adequately protected without completely restricting the child's contact with the offending parent. The juvenile court must order reunification services for the mother and statutorily presumed father. [Citation.] An order for reunification services must include some form of visitation, which necessarily includes communication between parent and child. [Citation.] The juvenile court may bypass reunification services for a parent if the child was subjected to sexual abuse, but only if the child was subjected to 'severe sexual abuse.' [Citation.]"

We roundly reject this argument.

The issue here is the restraining order, not whether the juvenile court should have granted reunification services but did not due to a misapplication of section 361.5, subdivision (b)(6) [establishing that reunification services need not be provided in

8

cases of severe sexual abuse]. And, as father concedes, he was not entitled to reunification services because mother retained physical custody of minor. (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 19.) For these reasons alone, father's argument misses the mark by a wide margin.

As for the argument that father's sexual abuse of his daughter was not severe, this was not argued below and is therefore waived. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486.) Further, the argument is flawed. Section 361.5, subdivision (b)(6)(B) provides that a finding of severe sexual abuse "may be based on, but is not limited to," a list of acts, including "the penetration or manipulation of the child's, . . . genital organs or rectum by any animate . . . object for the sexual gratification of the parent[.]" Here, there is evidence that father manipulated minor's vagina by rubbing it, and also that he penetrated her vagina. That he did so over her clothing does not discount such heinous invasions.

The evidence was sufficient to establish that a restraining order was necessary to ensure minor's safety. The juvenile court did not abuse its discretion.

**DISPOSITION**

The order is affirmed.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

Filed 7/18/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B293062<br>(Los Angeles County<br>Super. Ct. No.<br>18CCJP03843A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff,<br><br>       v.<br><br>C.M.,<br><br>       Defendant and Respondent;<br><br>AL.M.,<br><br>       Defendant and Appellant. | **ORDER CERTIFYING OPINION FOR PUBLICATION** |

THE COURT:

The opinion in the above-entitled matter filed on June 26, 2019, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____
ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.