Filed 11/3/20  In re G.T. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re G.T., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B304295 (Super. Ct. No. J071989) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  S.T,  Defendant and Appellant. | |

S.T. (Mother) appeals from the juvenile court's order restraining her from contact with a social worker (Social Worker) from the Ventura County Human Services Agency (the Agency). (Welf. & Inst. Code,[1] § 213.5.)  We affirm.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL HISTORY

In January 2019, the Agency filed a juvenile petition after Mother tested positive for marijuana and methamphetamine at the birth of her son, G.T. The petition alleged Mother failed to protect G.T.[2] The juvenile court sustained the petition. It declared G.T. a dependent of the court and ordered him to remain in foster care. The court ordered family reunification services for Mother.

In August, the Agency filed a request for a restraining order against Mother. It alleged Mother's cousin told Social Worker that Mother stated "should she 'lose' [G.T.] in the upcoming dependency hearing . . . that she was going to 'kill the social worker . . . and herself' at the courthouse after the hearing." The cousin said "this is not an idle threat and that [Mother had] been exhibiting increasingly concerning behaviors and mental health issues." The cousin warned Social Worker to "be aware of her surroundings at all times."

Social Worker said she recently assisted G.T.'s foster parents with filing a police report against Mother, who had "threatened" the foster parents. Mother told the foster parents that G.T.'s "safety was at risk and that [G.T.] would be 'stolen,' and provided information that the [foster parents] had recently been followed to a medical appointment for [G.T.] and observed from afar."

The juvenile court granted a temporary restraining order and set a hearing date for the permanent restraining order. In the meantime, the Agency filed a sixth-month status report.

---

[2] The petition also alleged that G.T.'s father had abused substances and that his whereabouts were unknown. The father is not a party to this appeal.

In it, the Agency included further details about the police report. The foster parents received a text message from Mother that said: "'you should be aware of possible danger for my son. His father has said he knows where u guys live and also your names.'" However, the Agency noted that the alleged father was not in contact with the Agency, so there was "no way he could learn of the location of the doctor visit, the foster parent[s'] name[s] or any identifying information without the mother's disclosure." The status report also stated that Mother told a case aide that her "biggest fear is dad is going to break into that house and take the baby."

The juvenile court held a hearing on the permanent restraining order in January 2020. The Agency submitted a memorandum describing Social Worker's call with Mother's cousin about Mother's threats. The Agency also attached a memorandum that described an incident in November 2019 after a supervised visit at the Juvenile Justice Center (JJC). While a social worker from the foster agency and a case aide were preparing to transport G.T. back to the foster home, the alleged father pulled into the JJC parking lot to pick up Mother. They then began to "circle the parking lot around" the case aide and the social worker. As a result, the Agency developed a safety plan for dropping off and picking up G.T. at the JJC. The Agency told Mother that this behavior "is viewed as unsafe" and "intimidating." After the phone call, Mother texted the Agency: "[The alleged father] did just threaten to take the baby. I'm trying to leave now. Just put a restraining order on him if possible, I'm going to . . . ." The Agency informed Mother that alleged father's behavior has "now caused the Agency to be concerned for the safety of" G.T. Mother responded that it was

"very difficult to leave" the alleged father. A month later, the Agency learned that the alleged father continued to sit in the parking lot in front of the JJC. The Agency developed a new safety plan.

At the hearing, Mother objected to the admission of her cousin's statements as hearsay. The court ruled that it could consider the statements "as well as anything else in the file that would support the request. And having looked one more time at the memo, there are some indicia of reliability in some of the details that are provided." Mother made an offer of proof that if called to testify, she would deny making the threat.

After the hearing, the court issued the restraining order against Mother, and ordered it into effect for a period of three years.

## DISCUSSION

Mother contends the court erred when it issued the restraining order because it was not supported by substantial evidence. We disagree.

Pursuant to section 213.5, a juvenile court may issue an order "enjoining any person from . . . stalking, threatening, . . . harassing, telephoning, . . . contacting, either directly or indirectly, by mail or otherwise, [or] coming within a specified distance of, or disturbing the peace of the child's current or former social worker or court appointed special advocate." "A restraining order under section 213.5 is reviewed for an abuse of discretion. The juvenile court's factual findings are upheld if they are supported by substantial evidence." (*In re A.M.* (2019) 37 Cal.App.5th 614, 619.) In reviewing the evidence, we must draw all reasonable inferences to support the court's decision. (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 866 (*Carlos H.*).) We

4

construe the evidence in the light most favorable to the juvenile court's ruling, even if other evidence supports the contrary conclusion.  (*People v. Earp* (1999) 20 Cal.4th 826, 887-888.)  We will not find an abuse of discretion unless Mother demonstrates the court acted in an arbitrary, capricious, or patently absurd manner and that a miscarriage of justice resulted.  (*Carlos H.,* at p. 866.)

The juvenile court did not abuse its discretion here. Substantial evidence supports the restraining order.  (*In re Cassandra B.* (2004) 125 Cal.App.4th 199, 210-211 ["If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed"].)  The cousin reported that Mother threatened to kill Social Worker and herself if she were to "'lose'" G.T. in the next dependency hearing.  The cousin stated this was not an "idle threat" and warned of Mother's "increasingly concerning behaviors."

Other evidence also supports the restraining order. After a visitation at the JJC, Mother and G.T.'s father circled around the case aide and another social worker as they transported G.T. back to the foster home.  And according to Social Worker, Mother also told the foster parents that G.T. was at risk and reported that they had been followed when they took G.T. to a medical appointment.

In challenging the sufficiency of the evidence, Mother concedes that the juvenile court was permitted to rely "in whole or in part" on the cousin's hearsay statements.  (*In re M.B.* (2011) 201 Cal.App.4th 1057, 1071.)  However, she argues that the Social Worker's memorandum did not support the order.  Instead, the evidence supported a "conclusion that the father, and not the mother, posed a physical threat" to Social Worker.  We disagree.

There was ample evidence that Mother posed a threat to Social Worker.  The court thus did not abuse its discretion when it granted the restraining order.

**DISPOSITION**

The order (granting the permanent restraining order dated January 22, 2020) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

6

Tari L. Cody, Judge

Superior Court County of Ventura

_____


          Landon Villavaso, under appointment by the Court of Appeal, for Defendant and Appellant.

          Leroy Smith, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.