Filed 9/7/21  In re I.L. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re I.L. et al., Persons Coming Under the Juvenile Court Law. | B309586 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 20CCJP02778 |
| Plaintiff and Respondent, | |
| v. | |
| M.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge. Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Stephanie Jo Reagan, Principal Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

M.L. (father) appeals from a restraining order entered against him under Welfare and Institutions Code[1] section 213.5. His sole contention on appeal is that the juvenile court erred by including his three children, J.M.L., J.M., and I.L., as protected persons under the restraining order. Specifically, he argues the evidence is insufficient to establish the children's safety would be in jeopardy unless they were included in the order. We disagree and affirm.

# BACKGROUND

Mother and father are the parents of J.M.L., J.M., and I.L., who were six, five, and four years old, respectively, when this case was initiated in May 2020. The parents had been in a relationship for approximately nine years. The children lived in their paternal grandmother's home with their parents and several other paternal relatives.

On April 30, 2020, the parents got into an argument after father noticed mother had received a text message on her Apple Watch. Believing the message was from another man, and that mother was cheating on him, father "became irate." Their argument escalated into a physical altercation when he picked up a knife with a six-inch serrated blade from the kitchen table and stated: "'I'm going to kill you before I let you go with anyone else.'" Father then twice tried to stab mother with the knife. While she was able to dodge his first attempt, she sustained a half-inch laceration to her left shoulder blade during the second.

---

[1]    All undesignated statutory references are to the Welfare and Institutions Code.

2

Upon hearing the commotion, the children went to the kitchen. They saw father attempting to stab mother with the knife. Consequently, they hid under the kitchen table. The children's paternal relatives ultimately intervened and de-escalated the situation.

A second incident of domestic violence occurred a few days later. Mother was asleep when father returned home from work at around 5:00 a.m. He woke her up, "began calling [her] foul names[,]" and "confront[ed] her about her possibly having an affair." When mother denied having an affair, father punched her on the right side of her face and on her arms. He also kicked her back and stomach. J.M. was present for the incident, "heard father calling mother mean names[,]" and saw him kick mother.

Later that day, mother went to the police station and filed a domestic violence report. In addition to reporting the two incidents above, she told the police that there were "4 [other] unreported" incidents of domestic violence between the parents. The police checked mother for injuries and observed she had a bruise on her right forearm, as well as "an approximate half inch superficial laceration on the back of her left arm, by her left shoulder blade from where [she] stated [father] stabbed her." She also "complained of pain to her right cheek from w[h]ere [father] had punched her." The police noted mother had obtained an emergency protective order against father.

On the same date she spoke to the police, mother took the children to stay with their maternal aunt. About a week later, she obtained a temporary restraining order (TRO) against father, which included the children as protected persons. Father was denied visitation with the children pending the June hearing on the TRO.

After conducting an investigation, in May 2020, the Department filed a petition on the children's behalf under section 300, subdivisions (a) and (b)(1). The petition alleged the children were at substantial risk of serious physical harm due to father's violent conduct toward mother, and mother's failure to protect them from his conduct by allowing him to reside with them and have unlimited access to them.

At the June hearing, mother's TRO was continued to July 2020, and the TRO was reissued to expire on the new hearing date. Subsequently, in July, mother filed a request for a restraining order in the juvenile court under section 213.5.[2] At a hearing held the same day, the juvenile court granted mother a TRO, which was set to expire following a hearing set for July 21, 2020. Among other things, the TRO required father to stay at least 100 yards away from the children's school. Father was granted monitored visitation. Later, per his request, the restraining order hearing was continued to December 7, 2020, the same date for which the petition's adjudication hearing had been set. The juvenile court reissued the TRO through that date.

At the December 7, 2020 hearing, the juvenile court began with the petition's adjudication. The court struck the allegations regarding mother's failure to protect the children from the count pled under section 300, subdivision (a). It sustained the

_____

2      Because mother's initial application for a TRO was filed before the Department initiated the underlying dependency case, it was assigned to a division of the superior court separate from the juvenile court, with its own case number (20STRO02460). After the section 300 petition was filed, the juvenile court informed mother that she could file another request for a restraining order before it and have the matter addressed as part of her children's dependency case.

4

remainder of the petition as pled and declared the children dependents of the court.

Proceeding to disposition, the juvenile court removed the children from father and placed them with mother under Department supervision. Father was granted monitored visitation and ordered to participate in a 52-week certified domestic violence batterer intervention program, parenting classes, and individual counseling.

Subsequently, the juvenile court granted a restraining order after hearing, which listed mother and all three children as protected persons. Among other things, the restraining order required father not to have any contact with the children except during monitored visits. The restraining order was originally set to expire on December 6, 2025. On March 11, 2021, however, the juvenile court modified the order to expire on December 6, 2023. Father timely appealed.

## DISCUSSION

Under section 213.5, subdivision (a), the juvenile court may issue an order "enjoining any person from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, . . . destroying the personal property, contacting, . . . or disturbing the peace of the child[.]" The statute "also permits the court to issue orders including the child's parent as a person protected from the behaviors listed above and excluding the restrained person from the child's home." (*In re C.Q.* (2013) 219 Cal.App.4th 355, 363 (*C.Q.*).) "Monitored visitation of a child is not incompatible with a restraining order. [Citations.]" (*In re N.L.* (2015) 236 Cal.App.4th 1460, 1466.)

"Issuance of a restraining order under section 213.5 does not require 'evidence that the restrained person has previously

5

molested, attacked, struck, sexually assaulted, stalked, or battered the child.' [Citation.] Nor does it require evidence of a reasonable apprehension of future abuse. [Citation.]" (*C.Q.*, *supra*, 219 Cal.App.4th at p. 363.) Rather, the juvenile court may issue a restraining order listing the children as protected persons where "[t]he evidence indicate[s] the children's safety might be in jeopardy absent their inclusion in the . . . order. [Citation.]" (*Id.* at p. 364.)

"However, safety is not limited to preventing only physical harm. [Citations.]" (Seiser and Kumli on California Juvenile Courts Practice and Procedure § 2.47.) Children may be included as protected persons in a section 213.5 restraining order where there is "evidence that the restrained person 'disturbed the peace' of the protected child. [¶] In this context, *disturbing the peace* means "'conduct that destroys the mental or emotional calm of the other party." [Citation.]' [Citation.]" (*In re Bruno M.* (2018) 28 Cal.App.5th 990, 997, italics in original (*Bruno M.*); *In re A.M.* (2019) 37 Cal.App.5th 614, 619 [restraining order prohibiting contact between father and his daughter was appropriate where "there was sufficient evidence that any contact between [them] would jeopardize her emotional and psychological safety"].)

"In reviewing the issuance of a restraining order under [section 213.5], 'we view the evidence in a light most favorable to the respondent, and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. If there is substantial evidence supporting the order, the court's issuance of the restraining order may not be disturbed.' [Citations.]" (*Bruno M., supra*, 28 Cal.App.5th at pp. 996-997, fn. omitted.)[3]

---

3      While "[s]everal courts have applied the substantial evidence standard in reviewing the issuance of a restraining

6

Father contends the juvenile court erred by including the children as protected persons in the restraining order because "the evidence was insufficient to demonstrate that failing to include [them in the order] would jeopardize [their] safety[.]" In support, he analogizes this case to *C.Q.*, *supra*, 219 Cal.App.4th 355, emphasizing that he never harmed or threatened to harm the children, that he has not had contact with mother since she left the family home, and that the evidence did not demonstrate he would improperly contact the children outside the context of monitored visitation.

As discussed below, we disagree with father's argument because *C.Q.* is distinguishable from this case. Instead, we find this case is far more similar to *Bruno M.*, *supra*, 28 Cal.App.5th 990, and conclude the record contains substantial evidence to support the children's inclusion in the restraining order.

In *C.Q.*, the family came to the Department's attention when the mother reported to the police that, during an argument, the father struck her with a closed fist while their three minor children were present in the home. (*C.Q.*, *supra*, 219 Cal.App.4th

order under section 213.5[ ] [citations]" (*In re N.L.*, *supra*, 236 Cal.App.4th at pp. 1465-1466), others have applied both the substantial evidence and abuse of discretion standards. (See, e.g., *In re Carlos H.* (2016) 5 Cal.App.5th 861, 866, fn. omitted ["[A]ppellate courts apply the substantial evidence standard to determine whether sufficient facts supported the factual findings in support of a restraining order and the abuse of discretion standard to determine whether the court properly issued the order. [Citations.]"].) "The practical differences between the two standards in this context are not significant. [Citation.]" (*In re N.L.*, *supra*, 236 Cal.App.4th at p. 1466.) Here, under either standard, we conclude the juvenile court did not err by including the children as protected persons in the restraining order.

at p. 358.) The mother reported one of the children observed the incident and intervened, and that all three children witnessed a similar incident a year before. (*Id.* at pp. 358-359.) When interviewed by the Department, however, the children denied knowledge of any domestic violence between the parents. (*Id.* at p. 359.) Subsequently, the juvenile court issued a restraining order requiring the father to stay away from the mother, the children (except during monitored visits), the children's school or childcare, and the family home where the mother resided with the children. (*Id.* at p. 363.)

The Court of Appeal reversed the portion of the restraining order naming the children as protected persons. (*C.Q.*, *supra*, 219 Cal.App.4th at p. 357.) It held "[t]here w[as] no evidence indicating the children's safety might be in jeopardy absent their inclusion in the restraining order. [Citation.]" (*Id.* at p. 364.) In support of its holding, the Court of Appeal emphasized: (1) the father did not challenge the portions of the restraining order requiring him to stay away from the mother or the family home; (2) the father was granted monitored visitation with the children, which the mother was not to monitor; (3) "[t]he children have stated they want visits with their father and are not afraid of him[ ]"; and (4) the evidence did not establish father engaged in "any violent or otherwise inappropriate conduct" following the most recent domestic violence incident. (*Ibid.*)

In *Bruno M.*, the father argued there was insufficient evidence to support the inclusion of his two children in a section 213.5 restraining order. (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 997.) While he acknowledged the children may have been present when he was violent toward the mother, he asserted he "'was

never aggressive with [them] and they were never in the line of fire' of his assaults on [the] mother[.]" (*Ibid.*)

The Court of Appeal rejected the father's contentions and held the restraining order was supported by substantial evidence. (*Bruno M.*, *supra,* 28 Cal.App.5th at p. 999.) In support of its holding, the Court of Appeal reasoned: "Plainly, there was substantial evidence that [the] father 'disturbed the peace' of [the children]." (*Id.* at p. 997.) Specifically, it noted the record showed the children "were frequently present to witness the abuse[,]" that the couple's five-year-old son "yelled at his father to stop[ ]" and "reported that the attacks scared him[,]" and that their two-year-old daughter "covered her ears" during an incident. (*Ibid.*)

Additionally, the Court of Appeal noted that "while the children had not *yet* been hurt during [the parents'] altercations, the court could properly consider the extent and violence of [the] father's attacks on [the] mother when issuing the order." (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 998, italics in original.) Therefore, the Court of Appeal determined "the juvenile court 'could reasonably infer, from [the] father's tendency to resort to violence as well as from his evident lack of impulse control, that he might be a threat to the [the children's] safety[,]'" and that "'[s]uch a threat could arise, even in the mother's absence, if the father got angry with another adult or with [the children].'" (*Ibid.*)

As in *Bruno M.*, the record in this case reflects father "'disturbed the peace'" of the children by engaging in violent conduct toward mother in their presence. (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 997.) Further, as in *Bruno M.*, the evidence shows that although the children were not physically harmed by father's conduct, the juvenile court could find he could present a threat to their physical safety if they were not included in the

9

restraining order. (*Id.* at p. 998.) Therefore, we conclude the restraining order is supported by substantial evidence.

All three children reported they saw father attack mother with a knife. His violent conduct toward mother prompted them to hide under the kitchen table. J.M.L. and J.M. reported feeling scared during the incident. J.M.L. related that shortly thereafter, he did not let father hug him when father tried, and told father he loved mother. J.M. stated she "felt like father was trying to kill mother" during the incident. She also stated she "'couldn't stop crying'" afterwards, and that I.L. was crying as well.

In addition to observing the first incident, J.M. was present for the second incident. As noted above, the record reflects J.M. heard father call mother demeaning names, and saw him kick mother. J.M.L. reported that on another occasion, after mother had gone to sleep, he saw "'father hit [mother] in the tummy and she couldn't breathe.'"

Both J.M. and I.L reported they were afraid of father. Similarly, J.M.L. stated he did not like that father fought with mother, and he felt scared whenever they fought. He related that after his parents finished fighting, he felt as though he "was going to cry[.]" J.M.L. also reported that he and his siblings "hide underneath the bed from father[.]" All three children reported they did not want to reside with father, and they wanted to continue living with mother. Additionally, J.M.L. and J.M. stated they no longer liked father.

In late June 2020, the children's therapist reported J.M. and I.L. "expressed being afraid of their father and some concerns surrounding physical abuse." He stated "[t]he children also separately reported experiencing nightmares about [their] father finding them and taking them away from their mother."

10

According to the therapist, J.M.L. expressed "more concern for [his] mother's wellbeing than his own fears." The therapist stated that, overall, "[a]ll three of the children have been open about observ[ing] physical altercations between the parents and being afraid of their father." A few days before the restraining order hearing, he reported "the children are continuing to address fears as it relates to their father finding their whereabouts or taking them during an upcoming visit."

Based on the evidence discussed above, the juvenile court could reasonably find father has "'disturbed the peace'" of the children. (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 997; cf. *C.Q.*, *supra*, 219 Cal.App.4th at p. 364 [children "stated they wanted visits with their father and are not afraid of him"].) Pursuant to *Bruno M.*, this evidence is sufficient on its own to support the inclusion of the children as protected persons in the restraining order. (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 997 ["There need only be evidence that the restrained person 'disturbed the peace' of the protected child."].)

Although father concedes he "unquestionably . . . 'disturbed the peace' of the children" by being violent with mother in their presence, he maintains the evidence was still insufficient to support their inclusion in the restraining order. Specifically, he asserts the record does not demonstrate he would further contact mother, or contact the children outside of monitored visits, and therefore does not establish he would engage in conduct that would further "'disturb[ ] [their] peace'" in the future.

We are unpersuaded by father's argument for two reasons. First, he does not cite any authority demonstrating that when a parent has engaged in conduct that "'disturbed the peace'" of the child in the past, the record must establish that the parent is

11

likely to engage in similar conduct in the future in order for the child to be included in a restraining order. Indeed, *Bruno M.* indicates father's argument is inconsistent with, and therefore unsupported by, existing caselaw. (See *Bruno M.*, *supra*, 28 Cal.App.5th at p. 997, italics added ["There need *only* be evidence that the restrained person 'disturbed the peace' of the protected child."].) Second, the evidence discussed above shows that even though they occurred in the past, father's acts of violence toward mother continued to "destroy[ ]" the children's sense of "'mental or emotional calm'" up until the restraining order hearing. (*Id.* at p. 997.) Specifically, the children continued to report feeling fear and anxiety related to father. Under these circumstances, and considering father violated the TRO by going to their school,[4] the juvenile court could reasonably find the children's inclusion in the restraining order was necessary to protect their emotional and psychological safety.

We further conclude the evidence is sufficient to support a finding that the children's inclusion in the restraining order was necessary to protect their physical safety. On this point, mother reported father "'would snap at his nephews[ ] [and] his mom[,]'"

---

4      Father maintains he went to the children's school because the school informed him the children were not participating in classes regularly, and that "if he or [m]other did not attend a meeting at school, [one of them] would be arrested." He suggests we should credit his explanation and infer he would not contact the children outside of their monitored visits despite his violation of the TRO. In reviewing for substantial evidence, however, we must "'view the evidence in a light most favorable to the [Department], and indulge all legitimate and reasonable inferences to uphold the juvenile court's determination. . . .' [Citation.] " (*Bruno M.*, *supra*, 28 Cal.App.5th at pp. 996-997.)

he "'broke [mother's] TV and his mom's TV[,]'" and he "'would fight with his niece'" and call her demeaning names. She related father "damaged [her sister's] car" five years ago. She also stated that, on one occasion, he told mother that if she left him, "'he was for sure going to take [J.M.L.] away from [her].'" Further, the mother of father's oldest child from a prior relationship secured a domestic violence restraining order against him in 2006. Moreover, J.M.L. and J.M. reported father had hit them with an open palm.

On this record, and considering the nature and extent of the domestic violence incidents that gave rise to this case, "the juvenile court 'could reasonably infer, from . . . father's tendency to resort to violence as well as from his evident lack of impulse control, that he might be a threat to [the children's] safety. Such a threat could arise, even in . . . mother's absence, if . . . father got angry with another adult or with [the children]. Even assuming an opposite inference might be equally reasonable, we are not authorized to second-guess the juvenile court on this point.' [Citations.]" (*Bruno M.*, *supra*, 28 Cal.App.5th at p. 998.)

In sum, for the reasons discussed above, we conclude the record contains substantial evidence to support a finding that the children's inclusion in the restraining order was necessary to protect their physical and emotional safety. Accordingly, the juvenile court did not err by designating the children as protected persons in the restraining order.[5]

---

5    Father also challenges the restraining order's initial duration, arguing the juvenile court lacked the authority to issue a five-year restraining order under section 213.5. He argues that because "the plain language of [section 213.5, subdivision (d)(1)] mandates an initial maximum three-year term[,]" we should

13

## DISPOSITION

The juvenile court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.

---

reverse the portion of the order providing for a five-year term and remand the case to the juvenile court "with direction[s] . . . to issue a new restraining order with an expiration date no later than December 06, 2023." As noted above, however, the juvenile court modified the order while this appeal was pending and changed the expiration date from December 6, 2025 to December 6, 2023. Accordingly, father's argument on this issue is moot and need not be addressed.