Filed 3/26/26  In re C.H. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re C.H., a Person Coming Under the Juvenile Court Law. | C104681 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. M.H., Defendant and Appellant. | (Super. Ct. No. 24JV-32877-01) |

Father M.H. appeals from a juvenile court order terminating his reunification services at the 12-month review hearing.  On appeal, father contends the juvenile court did not understand the full scope of its discretion when terminating services and his case must be remanded for the juvenile court to clarify whether he is an alleged or presumed parent.  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In June 2024, the Shasta County Health and Human Services Agency (Agency) filed a dependency petition under Welfare and Institutions Code[1] section 300 for minor C.H., who was 13 months old. The petition was filed after minor was removed from the home of mother and alleged minor had been living there in deplorable conditions and was left unattended with drug paraphernalia and Fentanyl within reach. At the time of removal, minor was lethargic, severely dehydrated, had trouble breathing, and exhibited facial wounds. After being transported to a hospital, doctors made findings of physical abuse and developmental delays.

The petition stated both parents indicated father was minor's father. The petition alleged under section 300, subdivision (b)(1) that father: (1) had a prior dependency case ending in the termination of parental rights; (2) had a criminal history including possession of a dangerous weapon, assault with a deadly weapon, and inflicting great bodily injury; (3) was currently incarcerated and would be eligible for parole in October 2024; and (4) was unable to protect minor due to being incarcerated. The petition alleged under section 300, subdivision (g), that father was currently incarcerated leaving minor without a safe and sober caregiver and that under subdivision (j) father had a prior termination of parental rights in 2018.

Father was appointed counsel at the detention hearing, although neither father nor his counsel was present. The juvenile court found at this hearing there was a substantial danger to minor's physical health and there were no reasonable means to protect the child absent removal from parents' physical custody. Accordingly, the juvenile court ordered minor detained from the care of parents.

---

[1]     Further undesignated section references are to the Welfare and Institutions Code.

In early July 2024, father was sent notice of the juvenile court proceedings involving minor. The next jurisdictional report included prior reports from the Agency detailing allegations of domestic violence between mother and father. In a dispositional report the Agency filed in late July 2024, the Agency recommended no services be ordered for parents and identified father as an alleged parent.

Father filed a statement of parentage requesting DNA testing and stating he believed he was minor's father. Father opposed the Agency's no services recommendation, noting he would be released from incarceration soon and wanted to be involved in minor's life. In August 2024, the juvenile court found father was an alleged parent of minor. The juvenile court declared minor a dependent of the court and ordered no reunification services for parents.

Father subsequently filed another statement of parentage requesting DNA testing. He also filed multiple requests to change court order, arguing the circumstances underlying the juvenile court's prior order had changed. Specifically, father had been released from prison, was employed full time, and had housing. In February 2025, the court granted father's request to change court order and provided father with reunification services. Because the court granted services to father, it also ordered services be given to mother.

In July 2025, the Agency filed a status review report requesting services to father be terminated. The report provided father had missed seven of his weekly visits with minor since the court's February 2025 order and during one visit he was observed in an argument with mother. The report also provided father had not completed a parent engagement assessment or any drug testing. He had completed a drug and alcohol assessment, parent engagement classes, and a child family team meeting. In April 2025, father admitted to using drugs and was reported to police for driving under the influence after appearing under the influence during a visit. Father was also arrested in June 2025 for possession of narcotics and a violation of parole. The Agency recommended services

for father be terminated. It argued father had not completed his case plan services or demonstrated a behavior change, citing the information contained in the report.

At the 12-month review hearing in September 2025, father testified his lack of cell phone service and busy work schedule contributed to his inability to attend visitations and complete drug testing. He further testified he anticipated being incarcerated for six months to a year into the future. Father testified he wanted to participate in services, and his counsel requested a continuation of services. The juvenile court found by clear and convincing evidence that reasonable services were offered to father and he made minimal progress toward alleviating or mitigating the causes necessitating placement. Based on the Agency's reports, the court further found there was not a substantial likelihood minor would be returned to father before the 18-month review date, especially considering father's custodial status. The juvenile court ordered services to father be terminated but encouraged him to attend classes offered in prison and ordered at least one visit per month for one hour, which the Agency complied with by providing one highly monitored visit per week.

Father appeals.

## DISCUSSION

### I

*The Record Demonstrates The Juvenile Court Was Aware Of The Scope Of Its Discretion When Terminating Father's Reunification Services*[2]

Father contends the juvenile court misunderstood the scope of its discretion when terminating services to him because the record does not reflect (1) the court knew father's

---

[2]    Father preemptively argues the Agency is estopped from relying on the juvenile court's finding he was an alleged father when arguing the court did not abuse its discretion when terminating services. The Agency does not rely on the court finding father an alleged parent, and thus we will not address this issue.

4

incarceration was insufficient alone to terminate services, or (2) it could continue services to him given its decision to extend services to mother past the 12-month review hearing. We disagree.

Two subdivisions of section 366.21 guide the juvenile court's analysis in deciding whether to continue services to the 18-month review hearing. Under subdivision (f), the juvenile court must first decide "whether reasonable services . . . have been provided . . . to the parent" (§ 366.21, subd. (f)(1)(A)), and whether the parent has " 'availed himself or herself of services provided' " (*A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1059). Next, the court must decide whether there is a substantial probability the child will be returned to the physical custody of their parent and safely maintained in the home within 18 months of the date the child was physically removed from parental custody. (§ 366.21, subd. (g)(1).)

To find a substantial probability of return, the juvenile court must make three findings: (1) The parent consistently and regularly contacted and visited the child, (2) the parent made significant progress in resolving the problems that led to the child's removal, and (3) the parent demonstrated the capacity and ability to complete the objectives of the treatment plan and provide for the child's safety, protection, and physical and emotional well-being. (§ 366.21, subd. (g)(1)(A)-(C).)

The decision to terminate reunification services at the 12-month review hearing is typically reviewed for abuse of discretion. (See *In re Alanna A.* (2005) 135 Cal.App.4th 555, 565.) Under that standard, we will reverse the juvenile court's ruling only if it is arbitrary, capricious, or patently absurd resulting in a miscarriage of justice; we indulge all reasonable inferences to support the juvenile court's decision. (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 866.) "If the record affirmatively shows the [juvenile] court misunderstood the proper scope of its discretion, remand to the [juvenile] court is required to permit that court to exercise informed discretion with awareness of the full scope of its discretion and applicable law. [Citations.] The appellant bears the burden of

5

showing a [juvenile] court abused its discretion." (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 16, italics omitted.)

Father argues the juvenile court applied the wrong legal standard by basing its decision to terminate services solely on father's incarceration. Father points to the juvenile court's oral statements to father, clarifying it did not see the possibility of minor's return given father's incarceration. But as part of the juvenile court's written order, the court also found father had not made substantial progress toward alleviating or mitigating the causes necessitating placement, which is a required consideration when assessing the probability of return of minor. (See § 366.21, subd. (g)(1)(B).) Further, the court indicated it considered the Agency's reports and information contained therein when making its decision. The reports contained extensive information relevant to whether father consistently visited minor, made significant progress in resolving the problems that led to minor's removal, or demonstrated the capacity to provide for minor's safety, protection, and physical and emotional well-being. (See § 366.21, subd. (g)(1)(A)-(C).) Finally, the juvenile court made the required statutory findings in relation to mother's continued services, demonstrating it knew of the appropriate considerations and standard of assessing whether father was entitled to further services. Taken together, the record does not affirmatively demonstrate the juvenile court believed it could base its decision to terminate services solely on father's incarceration, as father contends. Thus, father has failed to show an abuse of discretion in this regard.

Citing *In re Alanna A.*, *supra*, 135 Cal.App.4th 555 and *In re Jesse W.* (2007) 157 Cal.App.4th 49, father contends that, because mother was given services, in addition to applying the statutory factors of section 366.21, subdivision (g)(1) when deciding whether to terminate services to him, the juvenile court was also required to determine whether father would utilize services and whether those services would ultimately inure to the benefit of minor. To father, the record reflects the juvenile court was unaware of

its discretion to continue his services despite his failure to meet statutory requirements. We disagree.

The juvenile court previously awarded services to mother under the exact reasoning father advocates for his continued services past the 12-month review hearing. Although father did not specify at the 12-month review hearing which authority under which he sought further services, father testified he was willing to engage in services and requested further services. The court's oral and written findings related to father's continued services are also relevant to the question of whether services would inure to the benefit of minor, including that father would be incarcerated for six months to a year and be limited to weekly virtual visits with minor. Neither *Alanna A.* nor *Jesse W.* require the juvenile court to make an express finding a parent would not utilize services or that services would not inure to the benefit of the minor before terminating services for one parent while continuing them for another. (*In re Jesse W.*, *supra*, 157 Cal.App.4th at pp. 65-66; *In re Alanna A.*, *supra*, 135 Cal.App.4th at pp. 565-566; see *In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 876, 881.) Given the juvenile court's prior provision of services to mother and its reasons for terminating services to father, the record does not affirmatively reflect the juvenile court misunderstood its discretion to continue services to father even though he did not independently meet the statutory requirements to do so. Accordingly, father has not demonstrated an abuse of discretion in this regard.

II

*Father's Parentage Status Is Not Cause For Remand*

Father contends the matter must be remanded for the juvenile court to reconcile its express finding father was an alleged parent and its implied finding father was a presumed parent, i.e. treating him as a presumed parent who was entitled to reunification services. (See *In re J.H.* (2011) 198 Cal.App.4th 635, 644.) We disagree remand is necessary.

Father was treated as a presumed parent throughout the duration of his case, and we reviewed the merits of his claims based on the premise he was a presumed parent. The juvenile court has a continuous duty to inquire about the parentage of each child. (See Cal. Rules of Court, rule 5.635(a), (b).) If a person appears at a hearing in a dependency matter and requests judgment of parentage on form JV-505, the court must determine: "(1) Whether that person is the biological parent of the child; and [¶] (2) [w]hether that person is the presumed parent of the child, if that finding is requested." (Cal. Rules of Court, rule 5.635(h).) Thus, neither the juvenile court's orders nor our opinion foreclose father from pursuing presumed parent status at a future date despite the juvenile court's prior finding he was an alleged parent. Accordingly, remand is not required. (See *In re A.H.* (2022) 84 Cal.App.5th 340, 372 [the alleged father must show prejudice before a case is remanded for further proceedings].) Given this conclusion, we do not address father's remaining contentions.

## DISPOSITION

The order terminating father's reunification services is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
KRAUSE, J.

/s/
MESIWALA, J.